Battle, J.
 

 We have no hesitation in declaring our concurrence in the opinion given by his Honor in the Court below, that the defendants were liable for the sum of $5483,65, which is the amount for which the principal defendant was in default in April, 1857. The question depends upon the proper construction of several acts of the General Assembly in relation to common schools.
 

 By the second section of the act of 1844, ch. 36,' it is made the duty of the county courts “ at the term next preceding the 1st Monday of October, in each and every year,” to appoint
 
 *446
 
 not less than five nor more than ten superintendents of common schools, who shall hold their appointments for one jrear and until others are chosen, and by the next succeeding section, that the terms of their office shall commence on the first Monday of October; the day after which, they shall assemble at the clerk’s office and elect one of their number chairman. After providing, in previous sections, for the payment of certain moneys into the hands of the chairman of the board of superintendents of common schools, and prescribing his duties in relation thereto, the 25th section directs the county court of each county to require the chairman, before he enters upon the duties of his office, to give bond with good and sufficient security in such sum as may be deemed reasonable and adequate, conditioned for the faithful ’application of the funds that may come to his hands and the discharge of all his duties; which bond shall be payable to the State of North Carolina, and shall be approved and received by a majority of the superintendents, and shall be filed by them with the clerk of the county court. The act of 1848, ch. 95, in section 1st, alters the time of the election of the superintendents to the term of the several county courts, held next preceding the first day of January, and makes their office commence on that day, to “ continue for one year and until others shall have been appointed and entered upon their office.” The second section directs that the superintendents shall meet on the first Thursday in January
 
 “
 
 and elect one of their number chairman, and also appoint three committee-men in and for each school district in their county, whose office shall likewise begin and end at the time and in the manner prescribed in the case of superintendents.” It was under the provisions of the above recited acts of 1844 and 1848, that the defendant Daniel was appointed chairman of the board of superintendents of common schools for the county of Johnston, in January, 1855, and gave the bond upon which the present proceeding was instituted. As by express provision of the 2nd section of the act of 1848, ch. 95, his office was to continue for onej'ear and until another should be appointed and enter upon his
 
 *447
 
 office, it is manifest that he and his sureties continued to be liable, upon his bond, until his successor was elected in April, 1857, unless that liability was destroyed or removed by some other act of the General Assembly. The .counsel for the defendants, contends that it was taken away by the act of 1854, which forms the 66th chapter of the Eevised Code, and which, by force of the 121st chapter and 1st section of that Code, went into operation some time in the spring of 1855. The counsel argues, that when the last act took effect it repealed all the former statutes relating to the subject of common schools; that the office held by the principal defendant, Daniel, of chairman of theboard of superintendents, was thereby vacated; that his bond was no longer of any validity, and that his sureties were discharged fibm any further liability upon it. We do not admit the force of the argument. On the contrary, we think the objections to it are unanswerable. If the Act of 1854, (which, with a few exceptions, was to go into operation prior to the time prescribed for the Eevised Code,) were embraced, as to its repeal, in the second section of the 121st of the Eevised Code above referred to, then the vacation of the office, held by the principal defendant, Daniel, was expressly prevented by the 7th section of the same chapter, which enacts as follows : “ All persons who at the time, when the said repeal shall take effect, shall hold any office under any of the acts hereby repealed, shall continue to hold the same according to the tenure thereof, except those offices which may have been abolished, and those as to which a different provision shall have been made by the Eevised Code.” Now, it will be seen that the chairman of the board of superintendents of the common schools, is not abolished by the act of 1854, nor any change made in it, except as to the time when the superintendents and their chairman shall be elected and the term of their office begin. See Revised Code, ch. 66, sections 27, 28, and 29. If the act of 1854, were not embraced in the repealing section of the 121st chapter of the Eevised Code mentioned above, but were left to operate,
 
 proprio
 
 vigore, an implied repeal of the former acts on the subject of common schools
 
 *448
 
 then, as it lias no repealing clause, it operated a repeal only so far as it was inconsistent with the former acts, and there is no incompatibility between the provisions of the acts of 1844, 1848 and 1854, in relation to the election of superintendents and their chairman, except as to the time of election and the commencement of their term of office. The tenure of their offices, to wit, for one year, and thereafter, until the appointment and entering into office of their successors, is the same in all the acts, and there is, therefore, nothing in the last act of 1854, to prevent the continuance in office of the chairman, elected under the former acts, until a successor was appointed under the latter; so
 
 quaounque via data,
 
 the principal defendant, Daniel, and his sureties, were bound for his official acts under the bond given on his election in January, 1855, until his successor was appointed and entered upon his office in April, 1857.
 

 Pee Cueiam, Judgment affirmed.